# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

BRANDON COUNCIL,
    *Plaintiff*,

    v.

WILLIAM MARSHALL,
in his official capacity
as Director of the Federal Bureau of Prisons,
320 First St. NW
Washington, DC 20534

JOSHUA J. SMITH,
in his official capacity
as Deputy Director
of the Federal Bureau of Prisons,
320 First St. NW
Washington, DC 20534

ANDRE MATEVOUSIAN,
in his official capacity
as North Central Regional Director
of the Federal Bureau of Prisons,
400 State Avenue
Kansas City, KS 66101

RICK STOVER, in his official capacity as
Senior Deputy Assistant Director of the
Designation and Sentence Computation
Center of the Federal Bureau of Prisons,
Grand Prairie Office Complex
346 Marine Forces Drive
Grand Prairie, TX 75051

J. WADAS,
in his official capacity as Warden,
USP – Terre Haute
4700 Bureau Road South
Terre Haute, IN 47802

FEDERAL BUREAU OF PRISONS
320 First Street NW
Washington, DC 20534

    *Defendants*.

1

# EMERGENCY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF PREVENTING TRANSFER OF BRANDON MICHAEL COUNCIL TO SOUTH CAROLINA STATE CUSTODY

## INTRODUCTION

1. Plaintiff Brandon Michael Council seeks emergency relief from this Court to prevent the Defendants from transferring him to the State of South Carolina for state criminal proceedings seeking the death penalty, or at least delay his transfer until this Court can rule on whether such transfer is lawful and establish an orderly process ensuring that Mr. Council has access to his lawyers in both state and federal proceedings. Undersigned counsel learned on September 22, 2025 that the BOP intends to transport Mr. Council to South Carolina as soon as September 25 or September 26, 2025. Undersigned counsel learned on September 24, 2025 that a previously scheduled in-person contact legal visit with Mr. Council for September 26, 2025 had been cancelled.

2. Mr. Council has been in federal custody since his 2017 arrest and housed by the Bureau of Prisons (BOP) at United States Penitentiary (USP) Terre Haute since the conclusion of his federal trial in 2019. Because the federal government arrested Mr. Council and has continuously held him in federal custody, the federal government has primary jurisdiction over Mr. Council. As such, any transfer to state custody requires following the process outlined in 18 U.S.C § 3623 and BOP Program Statement 5140.44. Defendants will not be harmed if Mr. Council remains in BOP custody until the resolution of this matter.

3. Furthermore, Mr. Council objects to being transferred to state custody for criminal proceedings because a belated state prosecution against him would be nothing more than retaliation for his death sentence being commuted, and is therefore unlawful, and not in the public interest. Mr. Council is currently serving a sentence of life without the possibility of

parole in federal prison, following the commutation of his federal death sentence on December 23, 2024. The State of South Carolina dropped its case against Mr. Council in 2019. South Carolina's effort to revive the criminal case it closed and seek the death penalty against Mr. Council is nothing more than retaliation against Mr. Council for receiving a commutation, in violation of the United States and South Carolina Constitutions. The State's efforts to seek a new death sentence violate, *inter alia*, Due Process, including the protection against vindictive prosecution; the Sixth Amendment's Speedy Trial Clause; the Fifth Amendment's Double Jeopardy Clause; the Eighth Amendment's prohibition on cruel and unusual punishment; and the Tenth Amendment's prohibition on commandeering. As such, transferring Mr. Council to state custody for a new trial is not in the public interest.

## BACKGROUND

4.  Following a bank robbery in South Carolina on August 21, 2017, Mr. Council was arrested and taken into custody by U.S. Marshals on August 22, 2017. He was held in Pitt County Detention Center by U.S. Marshals. The federal government filed a Criminal Complaint against Mr. Council on August 24, 2017, and indicted him on September 20, 2017. Dkt. Nos. 1, 16.[1] The State of South Carolina indicted him on October 2, 2017. He was tried, convicted, and sentenced to death in the U.S. District Court for the District of South Carolina. The federal court issued its Judgment on October 7, 2019. Dkt. No. 860. South Carolina dismissed its case against Mr. Council via notice of nolle prosequi on October 28, 2019, and took no further action until recently, approximately six years later.

---

[1] Citations are to the Docket in Mr. Council's criminal case, District of South Carolina Case Number 4:17-cr-00866.

5. Mr. Council's death sentence was commuted to a life sentence by President Biden on December 23, 2024. The only impact of the commutation was to convert Mr. Council's federal death sentence to a federal life sentence. Mr. Council is serving a life sentence in federal prison. Currently, he is still housed on federal death row, officially called the Special Confinement Unit (SCU), at USP Terre Haute. The BOP has indicated its intent to transfer him to the federal supermax prison (ADX) in Florence, Colorado, although that transfer is being challenged in federal court. Whether or not Mr. Council goes to ADX or to a different BOP facility, he will remain incarcerated in BOP custody the remainder of his natural life. There is no dispute that Mr. Council has a federal life sentence.

6. Although this lawsuit seeks relief from Mr. Council's transfer to the custody of South Carolina without following the BOP's established procedure, it is relevant that South Carolina's proceedings themselves violate several of Mr. Council's constitutional rights. These points only serve to underscore why the transfer to state custody is improper, and Mr. Council here notes his objection to state proceedings because they violate his Constitutional rights, *inter alia*:

**Vindictive Prosecution**

7. "It can hardly be doubted that it would be a flagrant violation [of the Due Process Clause] of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside." *United States v. Goodwin*, 457 U.S. 368, 373 (1982) (alteration in original) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 723-24 (1969)). "Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play

no part in the sentence he receives after a new trial." *Goodwin*, 457 U.S. at 373 (quoting *Pearce*, 395 U.S. at 725).

8. Vindictive prosecution can be established through either direct evidence of punitive motives or from facts or circumstances that give rise to a presumption of vindictiveness. *Goodwin*, 457 U.S. at 373. If there is a realistic probability of vindictiveness, a presumption of vindictiveness arises, and the government has the burden to dispel it with evidence of a non-retaliatory, objective reason. *Goodwin*, 457 U.S. at 373, 376 n. 8.

9. Mr. Council was among the thirty-seven men whose federal death sentence was commuted on December 23, 2024. Then-President-elect Trump immediately expressed fury over the commutations. In his "Christmas Day message" on his social media platform, the President-elect specifically singled out the thirty-seven people, telling them to "GO TO HELL!" See Donald J. Trump (@realDonaldTrump), Truth Social (Dec. 25, 2024, 2:43 PM), https://truthsocial.com/@realDonaldTrump/posts/113715169361854155 (emphasis in original).

10. On January 20, 2025, hours after his inauguration, President Trump issued an Executive Order directing that, as to "the 37 murderers whose Federal death sentences were commuted by President Biden," which includes Mr. Council, "The Attorney General shall further evaluate whether these offenders can be charged with State capital crimes and shall recommend appropriate action to state and local authorities." EO 14164: Restoring the Death Penalty and Protecting Public Safety, 90 FR 8463, https://www.whitehouse.gov/presidential-actions/2025/01/restoring-the-death-penalty-and-protecting-public-safety/.

11. The State of South Carolina's decision to prosecute, following these comments, gives rise to a presumption of vindictiveness.

**Speedy Trial**

12. The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ."

13. The right to a speedy trial protects three key interests of criminal defendants: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker v. Wingo*, 407 U.S. 514, 532 (1972). "The history of the right to a speedy trial and its reception in this country clearly establish that it is one of the most basic rights preserved by our Constitution." *Klopfer v. North Carolina*, 386 U.S. 213, 225 (1967).

14. In determining whether the constitutional right to a speedy trial has been violated, courts consider four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530. An individual factor cannot be a "necessary or sufficient condition" for a speedy trial violation; rather, the factors are "related" and "must be considered together." *Barker*, 407 U.S at 533. If the constitutional right to a speedy trial has been violated, the remedy is for the case to be dismissed with prejudice. *Barker*, 407 U.S. at 522.

15. The first factor, the length of delay, is "a triggering mechanism." *Barker*, 407 U.S. at 530. If a defendant identifies a length of delay that is presumptively prejudicial, then inquiry into the other factors becomes necessary. *Barker*, 407 U.S. at 530. A delay "approaching one year may be considered presumptively prejudicial," *see Doggett v. United States*, 505 U.S. 652 n.1 (1992), and a delay "well over five years" is extraordinary," *Barker*, 407 U.S. at 533. The starting point for assessing delay is the date of indictment or arrest. *Doggett*, 505 U.S. at 655.

16.     Mr. Council was first indicted by the State of South Carolina in 2017, after he was arrested by federal officers and taken into federal custody. The federal government, not the State, tried him. After the federal trial, the state dropped the charges against Mr. Council, filing a notice of nolle prosequi on October 28, 2019. This *eight-year* delay is more than sufficient to trigger the analysis under *Barker*.

17.     As the second factor, the court must determine "whether the government or the criminal defendant is more to blame for the delay." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009). The government bears the burden to justify the delay. *See Barker*, 407 U.S. at 529 (holding that the rule announced regarding assertion of the speedy trial right "places the primary burden on the courts and the prosecutors to assure that cases are brought to trial"); *see also United States v. MacDonald*, 456 U.S. 1, 7 (1982); *Klopfer v. North Carolina*, 386 U.S. 213, 220-22 (1967).

18.     In Mr. Council's case, the State of South Carolina bears sole responsibility for the delay. The State decided to drop the case following Mr. Council's federal trial. At the time, there was nothing stopping the State from pursuing a case against Mr. Council, to either seek an additional death sentence or a life sentence. *See, e.g.*, John McCarthy, *State executes Alton Coleman for role in Midwest crime spree*, Toledo Blade (Apr. 26, 2002) (Alton Coleman received death penalty from three different states immediately following a 1984 crime spree).

19.     As to the third factor, assertion of the right, Mr. Council's federal trial proceeded quickly, and the State dropped the charges against Mr. Council shortly after the federal trial concluded. As such, there previously was no occasion for Mr. Council to assert his right to a speedy trial by a South Carolina court. Mr. Council now asserts this right.

20.     As to prejudice, in *Doggett*, the Court recognized "that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of

exculpatory evidence and testimony can rarely be shown." 505 U.S. at 655 (quotation marks omitted). Thus, the Court further recognized that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* As such, very lengthy delay (different from the delay required under the first factor triggering judicial examination) gives rise to a presumption of prejudice, which the prosecution likely cannot overcome even if it can rebut specific claims of prejudice. 505 U.S. at 658 & n.4.

21. Moreover, Mr. Council actually was prejudiced by this delay. Several potentially important mitigation witnesses have died since Mr. Council was initially indicted in 2017 and the State dropped its charges in 2019. These witnesses include Mr. Council's maternal grandmother, who died in 2020; family friends and other individuals who may have had information about the Council family's extensive history of serious mental illness; individuals who were previously incarcerated with Mr. Council and may have observed mental health symptoms then; and several close friends of Mr. Councils, who also may have observed mental health symptoms in either Mr. Council and/or his family members. At least two childhood friends have died since trial, shrinking the already small universe of witness who could provide insight into mental health symptoms or other mitigating evidence. Several of Mr. Council's friends had died by 2019, many by homicide, as had his father and the paternal grandmother who raised him.

22. Therefore, because of the extraordinary length of the delay, the State having sole responsibility for the delay, Mr. Council's assertion of his right to a speedy trial, and the prejudice inherent in such a long delay and the revival of charges that had previously been dismissed, the *Barker* factors break decidedly in Mr. Council's favor.

**Double Jeopardy**

23. In *Barktus v. Illiniois*, 359 U.S. 121 (1959), the Supreme Court recognized an exception to the dual sovereignty rule, which generally allows distinct sovereigns, like state and federal governments, to prosecute the same conduct without violating the Double Jeopardy Clause. In *Barktus*, the Supreme Court recognized that Double Jeopardy protections may apply where one sovereign serves "merely [as] a tool" of the other, or where a second prosecution equates to a "sham and a cover" for the first. *Id.* at 123-24. "A number of courts since the Bartkus decision have inferred from that case that collusion between federal and state authorities could bar the second prosecution." *United States v. Pena*, 910 F.Supp. 535, 539 (D. Kan. 1995) (citing *United States v. Moore*, 822 F.2d 35, 38 (8th Cir.1987); *United States v. Aboumoussallem*, 726 F.2d 906, 910 (2d Cir. 1984); *United States v. Aleman*, 609 F.2d 298, 309 (7th Cir. 1979), cert. denied, 445 U.S. 946, 100 S. Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Liddy*, 542 F.2d 76, 79 (D.C. Cir. 1976)).

24. Here, South Carolina has decided to prosecute Mr. Council for a 2017 crime, having previously dropped the charges against him, after his federal death sentence was commuted, after the President told Mr. Council to "GO TO HELL!" and issued an Executive Order directing that "The Attorney General shall further evaluate whether these offenders can be charged with State capital crimes and shall recommend appropriate action to state and local authorities."

25. These facts suggest that the State is serving "merely [as] a tool" of the federal government, seeking a death sentence against Mr. Council because the U.S. President is frustrated that the federal sentence was commuted. *Id.* at 123-24. *See also, e.g., United States v.*

*All Assets of G.P.S. Automotive Corp.*, 66 F.3d 483, 495 (2d Cir. 1995); *United States v. Bernhardt*, 831 F.2d 181, 183 (9th Cir. 1987).

26. Additional factual development may well reveal that the federal government has actually compelled the State of South Carolina to prosecute Mr. Council—conscripting State resources and/or personnel—then these proceedings violate the Tenth Amendment's prohibition on commandeering. Violation of the anti-commandeering doctrine is yet another reason why these proceedings should be dismissed.

27. Because the State's efforts to prosecute Mr. Council are unlawful and unconstitutional, in violation of, *inter alia*, Due Process, including the protection against vindictive prosecution; the Sixth Amendment's Speedy Trial Clause; the Fifth Amendment's Double Jeopardy Clause; the Eighth Amendment's prohibition on cruel and unusual punishment; and the Tenth Amendment's prohibition on commandeering, his transfer is not in the public interest.

28. More importantly, there has been no showing that the appropriate transfer procedures were followed.

29. Because these State proceedings are unconstitutional and because there has been no showing of jurisdiction by the State of South Carolina, Mr. Council should not be transferred to the custody of the State of South Carolina.

**JURISDICTION AND VENUE**

30. Jurisdiction is proper in this United States District Court under 28 U.S.C. § 1331, the Administrative Procedure Act, 5 U.S.C. § 702, 28 U.S.C. § 1346, 28 U.S.C. § 2201, 28 U.S.C. § 2202 and 28 U.S.C. 1343(a).

31. This Court is authorized to render declaratory and injunctive relief pursuant to 28

U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1651, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

32. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because Mr. Council resides in this District, as he is being held by the BOP at USP Terre Haute.

## PARTIES

33. Brandon Michael Council is an individual in the physical custody and legal custody of the Bureau of Prisons, currently housed at USP Terre Haute in Terre Haute, Indiana.

34. Defendant William Marshall is the Director of the BOP. The Director of the BOP is responsible for the promulgation of BOP policies and for compliance with federal law and BOP policies, and is ultimately responsible for the placement and housing of all people in BOP custody. He is sued in his official capacity.

35. Defendant Joshua Smith is the Deputy Director of the BOP. The Deputy Director is responsible for the promulgation of and compliance with federal statutes and BOP policies, among other things. He is sued in his official capacity.

36. Defendant Andre Matevousian is the North Central Regional Director of the BOP. He is responsible for overseeing the operations and management of multiple BOP institutions in the North Central Region, including USP Terre Haute. He is sued in his official capacity.

37. Defendant Rick Stover is the Senior Deputy Assistant Director of the Designation and Sentencing Computation Center within the BOP's Correctional Programs Division. He is responsible for implementing and overseeing BOP's classification and designation process and has the authority to approve transfers of federal inmates to state officials. He is sued in his official capacity.

38. Defendant J. Wadas is the Warden at USP Terre Haute. He is responsible for overseeing operations and management at USP Terre Haute and he also has responsibilities delegated to him related to transfers of federal prisoners to state custody as set forth in BOP Program Statement 5140.44. He is sued in his official capacity.

39. Defendant Federal Bureau of Prisons (BOP) is an agency of the Department of Justice (DOJ). It is responsible for the custody and care of federal prisoners. The BOP has custody of Plaintiff.

## CLAIMS FOR RELIEF

**COUNT 1: Fifth Amendment Procedural Due Process Claim Against All Defendants**

40. Plaintiff realleges and reincorporates all preceding paragraphs of this Complaint as if fully set forth herein.

41. Permitting Mr. Council to be removed unlawfully to the wrong sovereign merits an injunction because it violates federal law and Mr. Council's rights under the Due Process Clause.

42. The Fifth Amendment provides that "no person shall. . . be deprived of life, liberty or property, without due process of law." U.S. Const. amend V.

43. Pursuant to Mr. Council's right to Due Process, he cannot be transferred by the BOP, which has custody over him, to the State of South Carolina without proper procedures being followed.

44. The State of South Carolina lacks jurisdiction over Mr. Council. Because the federal government arrested Mr. Council and has continuously held him in federal custody, the federal government has primary jurisdiction over Mr. Council. It is well established that the federal government enjoys primary jurisdiction over an individual it "first arrested and imprisoned," and "could not without its consent be deprived of his custody until through with

him." *Zerbst v. McPike*, 97 F.2d 253, 254 (5th Cir. 1938); *see also Armstrong v. Salinas*, No. 6:13-cv-179, 2014 WL 340399, at *5 (E.D. Ky. Jan. 30, 2014) (citing *Ponzi v. Fessenden*, 258 U.S. 254, 260-62 (1922)). "Under this doctrine, the sovereign that first arrests an individual has primary control or custody over him; its claim over him has priority over all other sovereigns that subsequently arrest him; it is entitled to have him serve a sentence that it imposes, before he serves any sentence imposed by another sovereign; and it retains this priority, unless and until it has relinquished its jurisdiction to some other sovereign." *Armstrong*, 2014 WL 340399, at *5.

45. Because Mr. Council has a federally imposed life sentence, the federal government will retain primary jurisdiction over him for the rest of his life. At no point will any state be able to take custody of him without federal consent. Securing this consent requires a lengthy process established by federal statute and BOP Program Statement.

46. As such, any transfer to state custody requires following the process outlined in 18 U.S.C § 3623 and BOP Program Statement 5140.44—which has not been adhered to in this matter.

47. As there has been no showing that the transfer complies with § 3623, Mr. Council's state representatives have moved to quash the Writ of Habeas Corpus (but the South Carolina court has declined to delay a hearing on that basis).

48. Mr. Council objects to being transferred to state custody to be unlawfully prosecuted by the State of South Carolina.

49. Mr. Council further objects to a transfer that does follow the applicable procedures.

50. 18 U.S.C § 3623 designates the Director of the Bureau of Prisons to handle transfer requests from states. The statute provides that the Director "shall order that a prisoner

who has been charged in an indictment or information with, or convicted of, a State felony, be transferred to an official detention facility within such State prior to his release from a Federal prison facility" under three conditions. § 3623. It lists three requirements for transfer: "(1) the transfer has been requested by the Governor or other executive authority of the State; (2) the State has presented to the Director a certified copy of the indictment, information, or judgment of conviction ; and (3) the Director finds that the transfer would be in the public interest." *Id.*

51. Although the statute gives authority to the BOP Director, the BOP has further delegated that authority to the Senior Deputy Assistant Director, Designation and Sentence Computation Center (SDAD, DSCC)." BOP Program Statement 5140.44 ¶ 2.

52. "When an institution receives a request from a State to transfer an inmate to State custody, the Warden must detail the facts of the State's request in a memorandum to the SDAD, DSCC." BOP Program Statement 5140.44, ¶ 3. The memorandum must address: "whether the transfer would be in the public's best interest"; "whether the transfer is recommended"; and "details about how transportation would be accomplished." 5140.44, ¶ 3.

53. The State of South Carolina and the BOP did not follow these procedures.

54. Moreover, in Mr. Council's case, a transfer to state custody to face the death penalty would not be in the public interest, and Mr. Council also objects to any transfer to state custody for the purposes of initiating new state proceedings against him, because such proceedings would be unconstitutional.

**COUNT 2: Administrative Procedure Act, 5 U.S.C. §§ 500-596 & 706 Claim for Arbitrary and Capricious Agency Action Against All Defendants**

55. Plaintiff realleges and reincorporates all preceding paragraphs of this Complaint as if fully set forth herein.

56. The APA, 5 USC 500-596 & 706, provides that courts "shall . . . hold unlawful and set aside agency action . . . found to be contrary to constitutional right, power, privilege, or immunity . . ." 5 USC § 706(b)(2).

57. Defendants have taken concrete steps to transfer Mr. Council from federal custody at USP Terre Haute to the State of South Carolina.

58. Those steps constitute final agency action. Defendants' conduct in preparing to transfer Mr. Council to custody in South Carolina represent the consummation of Defendants' agency decision-making process: they were ordered by agency leadership and do not contemplate any further consideration by the agency prior to transfer.

59. Actions taken by Defendants to transfer Mr. Council are causing and will continue to cause irreparable harm to Mr. Council, including physical, psychological, and emotional harm, distress, and mental anguish, and deprivation of his rights, including interference with his right to counsel.

60. For the reasons set forth above and incorporated here, Defendants' actions to transfer Mr. Council to the State of South Carolina custody are "contrary to constitutional right, power, privilege, or immunity" and therefore must be held unlawful and set aside. 5 USC § 706(2)(B). In particular, as detailed above, those actions violate his constitutional rights, including his rights under Due Process, including the protection against vindictive prosecution; the Sixth Amendment's Speedy Trial Clause; the Fifth Amendment's Double Jeopardy Clause; the Eighth Amendment's prohibition on cruel and unusual punishment; and the Tenth Amendment's prohibition on commandeering.

## PRAYER FOR RELIEF

1. Issue an order enjoining the Bureau of Prisons from transferring Mr. Council to South Carolina, or facilitating such transfer, until he has completed his federal sentence;

2. Issue a preliminary and permanent injunction enjoining Mr. Council from being transferred under 18 U.S.C. § 3623 to the State of South Carolina;

3. In the alternative, issue an order enjoining Mr. Council's transfer until this matter can be fully briefed and resolved by this Court;

4. Issue an order requiring the BOP Director to secure physical custody of Mr. Council;

5. Issue a declaration that Defendants are unlawfully seeking to transfer Council under 18 U.S.C. § 3623 or other applicable provisions of federal law;

6. Grant such other relief as this Court deems proper and just.

Respectfully submitted

/s/ F. Italia Patti
Charity L. Brady, Assistant Federal Defender
F. Italia Patti, Assistant Federal Defender
§ 2255 Unit
Indiana Federal Community Defenders
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Phone: 317-383-3520
charity_brady@fd.org
italia_patti@fd.org

Dated: September 24, 2025